# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| M. MICHAEL REILLY, | ) |
| Plaintiff, | ) |
| | ) No. 13 C 2885 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| CONTINENTAL CASUALTY CO., | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff M. Michael Reilly ("Reilly") and Defendant Continental Casualty Company ("CNA") bring cross-motions for summary judgment on Reilly's Complaint alleging that CNA violated Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), by denying his claim for additional benefits. Reilly seeks to collect the full amount of retirement benefits as previously quoted to him by CNA, challenging the downward adjustment of those benefits just before his eligibility began as without rational basis. Because the Court agrees that the administrative record provides no reasonable basis for CNA's denial of benefits, Reilly's Motion for Summary Judgment [39] is granted and CNA's Motion for Summary Judgment [42] is denied.

# BACKGROUND[1]

Reilly was a CNA employee from January 1, 1991 until October 29, 1999. Reilly participated in CNA's Retirement Plan (the "Plan") and Supplemental Executive Retirement Plan (the "SERP"), known at the time of his employment as the CNA Employees' Benefit Equalization Plan. CNA used the SERP to give highly compensated participants a benefit equal to what they would have been eligible for under the Plan but for Internal Revenue Code compensation limitations. CNA is the plan administrator for both the Plan and the SERP and has the exclusive right to interpret their terms and provisions. It also has discretion in the administration of the Plan.[2] Under the terms of the Plan, CNA is given the power to decide eligibility and benefits questions, including determining and approving benefit payments and correcting mistakes in current or future benefit amounts.

An employee covered by the Plan becomes eligible to receive a benefit in the form of a lifetime monthly annuity when he or she reaches age sixty-five. The Plan explains the process for calculating the monthly annuity. One of the elements of the annuity calculation is the "Highest Average Monthly Compensation," which is derived from the sixty-consecutive months that will produce the highest average monthly compensation. Compensation is defined by the Plan as:

---

[1] The facts in this section are derived from the Parties' Joint Statement of Undisputed Material Facts and the Administrative Record. The Court acknowledges CNA's argument that Reilly sometimes cites to the Bates numbers of the Administrative Record, rather than numbered paragraphs of the Parties' Joint Statement, a violation of Local Rule 56.1 and this Court's standing order. However, more often Reilly cites both the Administrative Record and the Joint Statement, and when he cites the Administrative Record, it is to portions of the record directly cited in the Joint Statement. The Administrative Record was incorporated into the Joint Statement through the Declaration of Nancy Perry and there is no dispute as to the Record's contents or authenticity. Therefore this citation error will be overlooked. *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (a district court has discretion in determining whether to strictly apply or overlook transgressions of local rules); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) (failure to comply with these rules does not automatically result in a grant of summary judgment; ultimately the burden remains on the party to support its motion).

[2] The SERP incorporates by reference all provisions of the Plan.

> regular salary paid to an Employee, including any incentive
> compensation, employees' tax deferred contributions made
> pursuant to a Code section 401(k) qualified "cash or deferred"
> arrangement, a Code section 125 "cafeteria plan" maintained by
> the Employer, overtime, and incentive or performance bonuses
> such as under the Annual Incentive Bonus Plan, Performance
> Achievement Rewards, part-time bonuses and variable plans.

JSMF ¶ 18. Excluded from compensation are

> bonuses which are not incentive or performance bonuses, including
> miscellaneous pay, educational bonuses, referral bonuses, retention
> or stay bonuses, overseas allowances, hiring bonuses, service
> anniversary bonuses and retirement bonuses. Also excluded from
> the compensation are bonuses which are paid after an Employee's
> Break in Service, all benefits not paid in cash, lump sum payments
> of unused vacation days, and all severance payments.

*Id.* (emphasis omitted). To calculate a benefit for an employee covered by both the Plan and SERP, CNA calculates a single retirement benefit based on the Plan without applying the compensation limits contained in the Internal Revenue Code and then divides the benefit between the two plans for payment.

Reilly became eligible for the monthly annuity distribution when he turned sixty-five in September 2012. Thirteen years elapsed between the time Reilly left his employment with CNA and when he became eligible for benefits. During that period, CNA periodically sent Reilly communications containing an estimate of his combined monthly benefit. In 1999, relying on a pay history document ("1999 Pay History") and using a Highest Monthly Average Compensation figure based on the last ten months of 1992 through the first two months of 1997 ("1999 Compensation Calculation"), CNA calculated Reilly's monthly benefit to be $5,435.04. In June 2012, CNA sent Reilly benefit commencement paperwork restating that benefit calculation.

Soon after, CNA recalculated Reilly's benefit amount after having determined that his benefit calculation had incorrectly included his "benefits salary" instead of just his W-2 earnings

3

in his compensation. Before Reilly's payments started, CNA notified him of the miscalculation of the monthly amount based on ineligible compensation. CNA calculated the new amount as $4,235.40 per month. The error was explained in an October 22, 2012 letter:

> When determining the Highest Average Monthly Compensation amount (HAMC), the compensation used for his 1991 through 1995 employment was overstated resulting in an overstatement of the benefit amount payable at age 65. At the time of Mr. Reilly's termination he submitted his W-2's. His pension benefit calculation should have been based solely on his W-2 income for those years. Instead the calculation incorrectly included a combination of his W-2 income and his benefit salary from 1994 and 1995. A benefit salary was used to determine life insurance and disability amounts and should not have been included in his retirement calculation.

JSMF ¶ 39. The Plan's definition of "Compensation" does not include or reference the terms "benefit salary" or "benefits salary," and the term "benefit salary" is not referenced in the Plan. CNA does not define either of these terms in its briefing.

The 1999 Pay History document provided to Reilly as the basis for the initial benefit calculation does not reference the term "benefit salary"—it lists "monthly salary" and "incentive compensation" without any indication of the specific components of those headings. The Administrative Record does not contain any document that explains the calculation of the "benefit salary" portion of Reilly's compensation or any analysis of data setting forth the basis of CNA's new 60 month period used to determine the Highest Monthly Average Compensation.

Reilly appealed this new calculation of his monthly benefit. Reilly did not submit any records of his compensation history, paystubs, or other financial data to challenge CNA's new Highest Average Monthly Compensation calculation. The Administrative Record only includes W-2 statements for Mr. Reilly from 1991 through 1995. The Plan affirmed the new calculation and included a "Retirement Calculations Summary" showing three different estimates of Reilly's

4

benefit amount. This document also does not contain the term "benefit salary." Reilly filed a second-level appeal that was similarly denied on the basis that the compensation used in the previous calculations was inaccurate. This suit followed.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598–99 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The same standard applies when considering cross-motions for summary judgment. *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). Therefore, when considering CNA's motion for summary judgment, the Court views all evidence in the light most favorable to Reilly; and when considering Reilly's motion, the Court views all evidence in the light most favorable to CNA. *See id.*

## ANALYSIS

**I.  Standard of Review**

Where a retirement plan's terms confer discretionary authority on the administrator to determine benefits and construe the plan terms, the Court uses the deferential, arbitrary and capricious standard of review for a denial of benefits claim. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010). The Seventh Circuit has described this as "the least demanding form of judicial review," *Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005) (internal quotation marks omitted), and courts will uphold an administrator's decision unless it is "downright unreasonable" or "implausible" in light of the evidence, *Herman v. Cent. States, Se. & Sw. Areas Pension Fund*, 423 F.3d 684, 692 (7th Cir. 2005) ("[T]his court will not substitute the conclusion it would have reached for the decision of the administrator, as long as the administrator makes an informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts." (citation omitted) (internal quotation marks omitted)); *see also Russo v. Health, Welfare & Pension Fund*, 984 F.2d 762, 766 (7th Cir. 1993) ("Although it is an overstatement to say that a decision is not arbitrary and capricious whenever a court can review the reasons stated for the decision without a loud guffaw, it is not much of an overstatement."). The Court's review is limited to the administrative record. *Hess*, 423 F.3d at 662.

The Plan and SERP explicitly give CNA full administrative authority and discretion. JSMF ¶ 8. Therefore, arbitrary and capricious review of CNA's denial of Reilly's additional benefits is appropriate. *See Ponsetti*, 614 F.3d at 691; December 17, 2013 Order [29] at 8.

## II. The Parties' Cross-Motions for Summary Judgment

### A. The Denial of Benefits

CNA argues that Reilly cannot show its decision was "downright unreasonable" so as to justify overturning its robust review of his claim. CNA is correct that deference must be given to the administrator's interpretation of ambiguous plan language, unless such interpretation is unreasonable. *See Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011). In *Briggs*, the Seventh Circuit explained that arbitrary and capricious review was "not a rubber stamp," but a court should uphold a plan's decision if: "(1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Id.* (citation omitted) (internal quotation marks omitted).

CNA's main argument is that because "benefit salary" is not in the Plan definition of compensation, it should never have been included in the calculation of Reilly's benefits. This argument has an initial appeal, as "Compensation" under the Plan does not include "benefit salary." Indeed, "benefit salary" is not included in the Plan definition of either included or excluded compensation. CNA argues, under the doctrine of *expressio unius est exclusio alterius*,[3] that because the definition of compensation includes various types of compensation but does not specifically include "benefit salary," it was not appropriate to include "benefit salary" in the benefits calculation. However, this reasoning would apply equally to the various types of compensation listed as specifically excluded. That definition likewise does not include "benefit salary." This leads to the untenable result that "benefit salary" is neither included nor excluded

---

[3] This doctrine allows the negative inference that "expressing one item of [an] associated group or series excludes another left unmentioned." *Chevron U.S.A. Inc. v. Echazabel*, 536 U.S. 73, 80–81, 122 S. Ct. 2045, 153 L. Ed. 2d 82 (2002).

in the compensation definition. Furthermore, CNA does not argue that "benefit salary" fits into one of the specifically excluded compensation types.

Indeed, the Plan is wholly silent as to what "benefit salary" may or may not be and how it could affect Reilly's benefits. There is no way to tell what is included in "benefit salary" and how that might differ from or overlap with the eligible compensation such as incentive compensation or the compensation listed on Reilly's W-2. Without any idea of what a "benefit salary" might be, the Court and Reilly are left in the Kafkaesque situation where the administrator explains that benefits were calculated using an until-now unheard of basis, but because the administrator used that basis, the benefits are miscalculated. That kind of circular explanation is not based in the Plan language or the Administrative Record and cannot be sustained even under the deferential arbitrary and capricious standard of review. *See Becker v. Chrysler LLC Health Care Benefits Plan*, 691 F.3d 879, 885 (7th Cir. 2012) (under the arbitrary and capricious standard the administrator's decision requires a "reasoned explanation, based on the evidence").

CNA's failure to define "benefit salary" or base its denial in the language of the Plan throws its current justifications of the denial into question. CNA says that it explained "benefit salary" to Reilly by pointing to the phrase in its first stage denial letter, where it says a benefit salary was "used to determine life insurance and disability amounts," not retirement calculations. This tells us how "benefit salary" is used, but it does not define the phrase. There is no way to know what is included in a "benefit salary" or why this input was chosen, as opposed to "incentive compensation," which is expressly included in the compensation definition and is one of the categories listed on the 1999 Pay History. *See* JSMF ¶¶ 18, 22. The Administrative Record does not explain "benefit salary" and the only case cited by CNA for the concept defines

8

it as a salary calculated in U.S. dollars to set salary-based benefits for an employee who had worked overseas and been paid in foreign currency. *Karissiens v. Culligan Emps.' Pension Plan*, No. 93 C 7199, 1994 WL 163727, at *1 (N.D. Ill. Apr. 29, 1994). There is no reason to assume—and CNA does not argue—that specific definition applies here.

Although "benefit salary" is not defined in the Administrative Record, it does appear on one document. A document dated August 26, 1999, titled "Severance and Benefit Extension Option Worksheet" lists Reilly's "Current Benefit Salary" as $323,395. Admin. Rec. at CNA043, also attached to the Complaint as Exhibit A. This sheet appears to be a calculation of severance amount choices and benefits, including medical and life insurance, options. *See id.* This sheet's use of the phrase "benefit salary" and the context support CNA's explanation of "benefit salary" as a concept used to determine life and disability insurance amounts. However, again, this document contains no clue as to the definition of "benefit salary" and gives the Court no way to know from where the $323,395 number came or how it compares to the numbers in the 1999 Pay History or the definitions in the Plan. Indeed, it is not clear how the listed "benefit salary" amount carries over to the surrounding documents (or even if it does) and the High Average Monthly Compensation numbers and monthly benefit as calculated there. *See* Admin. Rec. at CNA044. Even under the highly deferential arbitrary and capricious review, and even with this faint glimpse of the 1999 estimation of Reilly's "current benefit salary," there is no reasonable basis in the record for what comprises benefit salary and why it is ineligible compensation.

CNA further argues that Reilly's compensation as calculated by it in 1999 was "erroneously inflated" and twice his actual income, and therefore his benefits should have been calculated only from compensation listed on his W-2's. CNA Mem. at 10-11. However, there is

nothing in the Plan language that dictates compensation is defined only as inputs from Reilly's W-2's. The Administrative Record does not even contain W-2's for Reilly's entire period of employment. Further, there is no indication that bonus compensation specifically excluded by the Plan definition did not appear on the W-2's as taxable income.

CNA does not attempt to explain this, but instead includes in its brief a chart comparing numbers from the 1999 Pay History and Reilly's W-2's to purportedly show the miscalculation in 1999. The 1999 numbers are taken from the 1999 Pay History document contains figures for monthly and "incentive compensation." However, incentive compensation is a specifically included type of compensation under the Plan, so it is unclear why the incentive compensation from 1999 would be ineligible. CNA does not argue that the monthly salary numbers from the 1999 Pay History document are somehow incorrect. CNA's states its "corrected" number is taken from compensation listed on the W-2's. However, the difference between the two sets of numbers is incomprehensible. Subtracting the corrected 2012 calculation from the allegedly erroneous 1999 calculation produces numbers that are not the same as the incentive compensation number from 1999. How are these two sets of totals related? Was there compensation in 1999 that was classified as "incentive compensation" but was not incentive compensation under the Plan? If so, how does that relate to "benefit salary"? For that matter, how do the W-2's compare to the "benefit salary"? While CNA does not need to explain "the reasoning behind [its] reason" for denying benefits, it must still have a discernible reason. *See Herman*, 423 F.3d at 695. CNA's explanation simply does not make sense in light of all the numbers floating around and the failure to tie "benefit salary" to the Plan language. The Court does not make any findings on the propriety of the initial calculation, *see Hess*, 423 F.3d at 658

("whether or not we would have reached the same conclusion is irrelevant"), but rather finds no reasonable basis for the Plan's claimed reason for subsequently reducing Reilly's benefit.

B.  **CNA's Duty to Correct Errors and Protect Plan Assets**

CNA argues that under the terms of the Plan and its fiduciary duty to Plan members, it must correct calculation errors and preserve Plan assets by not knowingly paying Reilly more than his actual benefits. Reilly does not respond to this argument in his briefing, which this Court understands as conceding this point. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (explaining failure to respond to an argument results in waiver). Indeed, plan administrators owe duties to plan beneficiaries, including the duty to preserve plan assets. *See Conkright v. Frommert*, 559 U.S. 506, 520, 130 S. Ct. 1640, 176 L. Ed. 2d 469 (2010) (noting plan administrators' duty to preserve assets). The Plan terms do give the administrator the power to calculate benefits and require the administrator to correct mistakes. JSMF ¶¶ 8–10. However, the mere existence of that duty and CNA's attempt to correct alleged mistakes does not relieve it of the requirement that its actions must be grounded in the terms of the Plan and reason. *See Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 766 n.5 (7th Cir. 2010) (explaining the arbitrary and capricious standard is applied "in ways that include focus on procedural regularity, substantive merit, and faithful execution of fiduciary duties"). The existence of the duty does not mean CNA acted in conformance with its duty and the requirement to correct mistakes does not mean CNA acted reasonably. Thus this argument does not carry the day for CNA.

C.  **Reilly's Failure to Exhaust**

Finally, CNA argues Reilly failed to raise three arguments during the administrative process and so those arguments are waived here. CNA characterizes these arguments as: 1) CNA did not properly explain its calculation methodology in its denial letters; 2) the

11

administrative record does not explain how CNA calculated Reilly's benefit and therefore the administrative process was insufficient; and 3) CNA did not explain the term "benefits salary" to Reilly during the administrative process.[4]  CNA Resp. at 6-9.

This Court's review of a denial of benefits is limited to the administrative record and a plaintiff cannot raise issues that were not first presented to the administrative committee. *Hess*, 423 F.3d at 662.  However, on review of the record, it is clear Reilly did present his core arguments to the administrative committee. *See, e.g.,* JSMF ¶¶ 37, 41.  The arguments that CNA alleges were not properly exhausted are irrelevant to the Court's current inquiry.  Reilly does not argue that the administrative process was insufficient—he contests the reduction of his benefits as arbitrary and capricious.  Furthermore, CNA's explanations to Reilly during the administrative process, sufficient or not, have no bearing on whether the denial had a reasonable basis in the Plan language. *See Herman*, 423 F.3d at 693–95 (stating, the fund "need not explain the reasoning behind their reason for denying . . . benefits.").  Because the Court has determined there was no reasonable basis for the denial based on "benefit salary," the alleged failure to exhaust these arguments is irrelevant.

## II.     Remedy

"Courts that find a plan administrator's denial of benefits to be arbitrary and capricious may either remand the case for further proceedings or reinstate benefits." *Leger v. Tribune Co. Long Term Disability Benefit Plan*, 557 F.3d 823, 835 (7th Cir. 2009) (citation and quotation

---

[4] To the extent CNA argues in its Reply in Support of its Motion for Summary Judgment [51] that all Reilly's arguments, or any arguments in addition to those listed above, are waived because he did not present them during the administrative review, that argument is disregarded. *See* CNA Reply at 7-8.  CNA does not make this argument in its opening brief and may not present new arguments in reply. *See, e.g., Militello v. Cent. States, Se. & Sw. Areas Pension Fund*, 360 F.3d 681, 690 n.10 (7th Cir. 2004) (expressly disregarding new arguments raised in reply).  Additionally, CNA does not provide any details about Reilly's alleged failure to exhaust these other alleged arguments—simply stating that none of the arguments were previously raised is not enough.

marks omitted). Reinstatement cases usually involve claimants who were receiving benefits, then lost those benefits due to the arbitrary and capricious behavior, or where the record does not support a termination or denial of benefits. *See Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 477 (7th Cir. 1998), *overruled on other grounds Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53, 130 S. Ct. 2149, 176 L. Ed. 2d 998 (2010). In deciding whether to remand or reinstate benefits after an arbitrary and capricious termination, the Seventh Circuit has explained that the emphasis is on restoring the status quo prior to the defective procedures. *See Holmstrom*, 615 F.3d at 778. The court drew a distinction between an initial denial of benefits, which likely requires remand, and the termination of benefits to which the plan administrator had already determined the employee was entitled, which may warrant reinstatement. *See id*.

Reinstatement in this case would serve to restore the status quo. Even though Reilly never actually received the additional benefits, he was quoted an amount for thirteen years before he reached eligibility. This is not a case where additional administrative findings are necessary—CNA made a determination of Reilly's benefit amount in 1999 and repeated that amount to him through June 20, 2012. JSMF ¶ 24. The Courts therefore orders Reilly's benefit payment in the amount of $5,435.22 per month to be reinstated and that CNA pay Reilly past due amounts retroactive to September 2012 for that amount of benefits not paid.

## CONCLUSION

For the foregoing reasons, Reilly's Motion for Summary Judgment [39] is granted and CNA's Motion for Summary Judgment [42] is denied. Judgment is granted in favor of Reilly. This case is terminated.

Dated: July 29, 2014

SARA L. ELLIS
United States District Judge

13